959 So.2d 15 (2006)
Jermaine A. RAMSEY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00070-COA.
Court of Appeals of Mississippi.
October 17, 2006.
Rehearing Denied April 3, 2007.
*19 James A. Williams, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
*20 Before LEE, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. Jermaine A. Ramsey was convicted by a Lauderdale County Circuit Court jury of the crimes of capital murder and robbery. Ramsey appeals, arguing numerous claims of error, including evidentiary errors, violations of his due process rights, right to silence, and right to effective assistance of counsel. We find no error and affirm.

FACTS
¶ 2. On the night of March 13, 2003, William Gill was shot to death in Lauderdale County, Mississippi. Driving his black Yukon SUV earlier that evening, Gill picked up the Appellant, Jermaine A. Ramsey, and Glen Stevens in order to find crack cocaine for Gill. The men drove around Lauderdale County in an attempt to score drugs from various sources.
¶ 3. At some point along their route, Gill pulled the SUV over on a back road to allow Ramsey to answer "the call of nature." According to eyewitness testimony by Stevens, Ramsey exited the vehicle and went behind a building. Upon his return, Ramsey walked up to the vehicle, stuck a .25 caliber Raven handgun through the window and opened fire. Ramsey lethally shot Gill five times, striking Gill four times in the head and neck area and one time in the shoulder, killing him. Ramsey then dragged Gill's body out of the vehicle, left him in a ditch, and drove off in Gill's SUV. Stevens claimed he remained in the back seat of the SUV during the sequence of events and did not participate in the shooting. Stevens stated that, after the shooting, Ramsey dropped him off, and Stevens did not have any further contact with Ramsey. Ramsey continued to drive the SUV and parked it at an abandoned lot near his mother's house.
¶ 4. Police recovered the body of William Gill on March 15, 2003. Operating on a tip from Ramsey's mother, police went to Ramsey's neighborhood where they discovered the stolen SUV and other evidence of the crime in the abandoned yard close to Ramsey's house. While police searched the yard for further evidence, Ramsey was spotted walking towards the vehicle. A police officer stopped Ramsey to question him, identified him as the suspect in question, and took Ramsey into custody. The officer initiated a pat down of Ramsey, wherein he found Ramsey in possession of the stolen SUV's keys. Ramsey later consented to a search of his house, where the police found spent shells from the gun used to shoot Gill. A further sweep of the abandoned yard yielded the gun that was used in the crime, and a bag containing Gill's personal effects was found in a trash bin several blocks away.
¶ 5. At trial, Stevens testified as an eyewitness to the crime, stating that Ramsey shot Gill repeatedly and thereafter stole Gill's vehicle. Stevens testified as a witness for the State in exchange for his willingness to plead guilty to a related charge of accessory after the fact to capital murder. Ramsey's arresting officers, as well as the officers who discovered Gill's body also gave testimony. In addition, the forensic pathologist who performed Gill's autopsy presented evidence of the cause of death, which included references to photographs taken during the autopsy.
¶ 6. The jury found Ramsey guilty of capital murder and robbery on August 1, 2003 in violation of Mississippi Code Annotated sections 97-3-19(1)(e) and 97-3-73 (Rev.2006). Ramsey was sentenced to life without parole on the capital conviction and fifteen years for the robbery, with the sentences to run concurrently. Ramsey *21 appeals, arguing prejudicial trial errors and ineffective assistance of counsel.

LAW AND ANALYSIS
I. WHETHER THE COURT ERRED WHERE THERE IS AN ALLEGED FATAL VARIANCE IN THE INDICTMENT AND JURY INSTRUCTIONS
A. Variance in jury instructions
¶ 7. Ramsey argues that the trial court erred in allowing a jury instruction that differed in its verbiage from the charge in his indictment. Ramsey claims that due to this variance, the jury was not instructed to find all the elements required for capital murder. We find this argument to be without merit.
¶ 8. No objection to the language of the jury instruction is in the record. It is well settled that if no contemporaneous objection is made at trial, the error, if any, is waived. Walker v. State, 671 So.2d 581, 597 (Miss.1995). Accordingly, we find that Ramsey failed to preserve this issue for appeal.
¶ 9. Notwithstanding the procedural bar, this issue is without merit. Ramsey was indicted for capital murder on July 28, 2003. Ramsey was indicted with Stevens on a second charge of robbery. Jury instruction C-10 stated in relevant part:
that if you find beyond a reasonable doubt that:
1. On or about the 15th day of March 2003 in Lauderdale County, Mississippi
2. The defendant, Jermaine Ramsey, acting alone or with another, did feloniously take personal property in the possession of William Gill from his person or his presence and against his will;
3. And during the commission of said robbery, William Gill, a human being, was killed with or without any design to effect his death;
then it is your sworn duty to find the defendant, Jermaine Ramsey, guilty of capital murder under Count I.
(emphasis added). Capital murder, as defined by Mississippi Code Annotated section 97-3-19 (Rev.2006), states in relevant part:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases: . . . (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of . . . robbery. . . .
We find that the language of the indictment properly charged Ramsey with capital murder under section 97-3-19(2)(e) and that jury instruction C-10 properly instructed the jury on the elements of capital murder under section 97-3-19(2)(e).
B. Constitutional rights violation regarding inconsistent statements
¶ 10. Ramsey argues that inconsistent evidence regarding whether Ramsey or Stevens killed Gill, in combination with the trial court's instructions permitting a conviction and sentence to prison for life without parole, constitute a Fourteenth Amendment due process violation. The record does not support this argument.
¶ 11. Ramsey relies on several United States Supreme Court cases to further this contention, including Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Jones v. U.S., 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We find *22 none of the referenced cases to be applicable to Ramsey's case. The cited United States Supreme Court cases all concern sentencing enhancements involving the death penalty. The district attorney in the present case did not seek the death sentence. The sentence considered for Ramsey was life without parole.
C. Failure to add "without authority of law" to portion of the jury instructions
¶ 12. Ramsey argues that the court fatally erred in not providing in a portion of the jury instructions the language, "without authority of law." When considering a challenge to a jury instruction, we read and consider the instructions in their entirety. Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990). If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Williams v. State, 803 So.2d 1159, 1161(¶ 6) (Miss.2001)
¶ 13. Jury instruction C-10 begins by stating the definition of capital murder under section 97-3-19. The statute provides that capital murder is "the killing of a human being without authority of law." The instruction then charges that if the jury finds beyond a reasonable doubt that Ramsey "did feloniously take personal property in the possession of . . . Gill . . . [a]nd during the commission of said robbery, William Gill . . . was killed with or without any design to effect his death," then the jury should find Ramsey guilty of capital murder. The relevant language "without authority of law" is not included in the jury's charge of when to find Ramsey guilty of capital murder. However, upon reading the instruction in its entirety and considering the language of the instruction as a whole, we find no error.
¶ 14. A similar situation arose in Harris v. State, 861 So.2d 1003 (Miss.2003). In Harris, the defendant argued that failure to include "without authority of law" constituted prejudicial error. The court considered the jury instructions in their entirety, and noted that the trial court properly charged the jury on the issues of law that the defendant claimed were omitted. The court noted that although the exact language from the statute was not used, this oversight was forgiven because the jury was adequately instructed through other language, because the word "unlawfully" was used in place of "without authority of law." Id.
¶ 15. We find that, even though a synonym of the phrase "without authority of law" did not appear in a separate enumerated paragraph in the second portion of Jury Instruction C-10, there was no error when reading the instruction as a whole. The jury was properly informed of the requisite findings under the statute and the proof needed to sustain such a charge.
D. Notice regarding deliberate design murder
¶ 16. Ramsey argues that another variance in the language of Count I of his indictment and Jury Instruction C-10 constituted a fatal error and violated his constitutional right to a fair trial. We disagree. The relevant language of Count I of the indictment states:
Jermaine A. Ramsey . . . did willfully, unlawfully, feloniously and knowingly kill WILLIAM GILL, a human being, with deliberate design to effect death by shooting the said WILLIAM GILL, while engaged in the commission of Robbery . . .
(emphasis added). The deliberate design murder language differs from that in Jury Instruction C-10, which states in relevant part:
[T]he court instructs the jury that if you find beyond a reasonable doubt that:

*23 . . . 3. And during the commission of said robbery, William Gill, a human being, was killed with or without any design to effect his death. . . .
(emphasis added).
¶ 17. Ramsey argues that the jury instruction should have required a finding of deliberate design. The court addressed this issue in Doss v. State, 709 So.2d 369 (Miss.1996). In Doss, the capital murder indictment stated that the defendant killed the victim with malice aforethought while engaged in a robbery. Id. at 387(¶ 66). Doss argued the indictment required the State to prove intent to kill, and complained that the jury instructions allowed him to be convicted of capital murder if the killing occurred without deliberate design in the course of the robbery. Id. at 387(¶ 69). Although the indictment charged Doss with intent to kill, the court found that felony murder does not require any intent to kill and the capital murder indictment was adequate to put the defendant on notice of the felony murder charge. Id. at 388(¶ 73). Thus, Doss's capital murder indictment did not require the State to prove intent. As support for its holding, Doss relied upon Griffin v. State, 557 So.2d 542, 549 (Miss.1990), which stated that "there is nothing about the statute which requires any intent to kill when a person is slain during the course of a robbery." Id. Accordingly, we find this argument to be without merit.
II. WHETHER RAMSEY WAS DENIED A FAIR TRIAL, FUNDAMENTAL FAIRNESS, CONFRONTATION OF WITNESSES AND DUE PROCESS OF THE LAW WHERE HIS DECISION NOT TO TESTIFY WAS ALLEGEDLY DUE TO THE PROSECUTION'S THREAT TO IMPEACH RAMSEY'S TESTIMONY WITH STATEMENTS HE MADE TO A PRIVATE PSYCHOLOGIST
¶ 18. Before trial, Ramsey was interviewed by a psychologist, Dr. John Goff, to determine Ramsey's mental capacity to stand trial. Ramsey claims that his decision not to testify arose when the State allegedly threatened to impeach his testimony by threatening to call Dr. Goff to the stand. We find this argument to be without merit, because the record does not indicate that the State used any intimidation tactics to keep Ramsey off the stand.
¶ 19. The court in Dizon v. State, 749 So.2d 996, 999(¶ 14) (Miss.1999) stated, "[I]f an accused is denied the right to testify on his own behalf, it is a constitutional violation regardless of whether the denial is a result of a refusal by the court or a refusal by the accused's counsel to allow the accused to testify." The court went on to suggest that if the defendant does not testify, the trial judge should, outside the presence of the jury, advise the defendant of the right to testify. Id.
¶ 20. In the instant case, the trial judge provided Ramsey with a detailed explanation of his right to decide to testify. The judge asked Ramsey whether he fully understood his rights, to which Ramsey replied in the affirmative and stated that he wanted to testify. After his statement, the State asked the trial court to rule on the admissibility of Ramsey's statements made during a competency examination with Dr. Goff. Ramsey then informed his lawyers he had changed his mind about testifying. The trial judge followed up with Ramsey further, asking him if he understood that he was voluntarily waiving his right to testify. Again, Ramsey stated in the affirmative that he understood his rights. The record does not indicate the precise reason why Ramsey changed his mind, and we cannot presume the cause of his change of heart. Therefore, we affirm the trial *24 court's finding that Ramsey's decision not to testify was voluntary.
III. WHETHER RAMSEY SHOULD HAVE BEEN GIVEN A LESSER-INCLUDED OFFENSE INSTRUCTION
¶ 21. Ramsey argues that he should have received a lesser-included offense instruction of obstructing justice (D-30-d), one for aggravated assault (D-26-b) and that the court should have given an instruction for simple murder. A lesser-included offense instruction is required only "where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt." Mackbee v. State, 575 So.2d 16, 23 (Miss. 1990). Whether a lesser offense instruction should be given turns on whether there exists an evidentiary basis for it. Hutchinson v. State, 594 So.2d 17, 20 (Miss.1992).
¶ 22. We find that the court did not err in refusing either of the lesser-included offense instructions, nor did the court err in not offering a simple murder instruction. Aggravated assault carries a stricter penalty (twenty years) than robbery (fifteen years). There is no dispute that Gill died as a result of being shot with a .25 Raven automatic pistol. The trial judge correctly held that aggravated assault was not under the facts of the case in any way a lesser-included or related offense of robbery. In the same manner, an obstruction of justice charge was not appropriate, nor do the facts in the record support such a charge. Ramsey did not request a simple murder instruction and is thus procedurally barred from raising this issue on appeal.
IV. WHETHER THE COURT ERRED BY ADMITTING AUTOPSY PHOTOGRAPHS
¶ 23. Ramsey asserts that four of the photographs taken during the autopsy of Gill were inflammatory and irrelevant to the case. We find no merit to this contention.
¶ 24. The admission of photographs is within the discretion of the trial judge and his or her decision will be upheld absent an abuse of that discretion. Hart v. State, 637 So.2d 1329, 1335-36 (Miss.1994). However, "[a]utopsy photographs are admissible only if they possess probative value." McNeal v. State, 551 So.2d 151, 159 (Miss.1989). They must not be so gruesome or used in such a way as to be overly inflammatory or prejudicial. Hurns v. State, 616 So.2d 313, 319 (Miss. 1993).
¶ 25. Photos taken at the autopsy were admitted into evidence during the testimony of Dr. Steven Hayne from the state medical examiner's office. One photo showed Gill's body before it was cleaned. The photo was used to demonstrate how Gill's face contained gravel and wounds consistent with the State's contention that Gill had been dragged along the ground. The remaining photos were taken after the body had been cleaned. They consisted of head, neck, and shoulder shots, depicting the entrance and exit wounds of the bullets. Dr. Hayne used the photos to describe the nature and cause of Gill's death, and to ascertain the angles and location of the gun used to effectuate that death.
¶ 26. Pictures such as these have been found to have probative value in showing the location and number of wounds, and the extent and force of the violence involved. Marks v. State, 532 So.2d 976, 981 (Miss.1988). Our supreme court has held that, "In considering the competency, relevancy and materiality of photographs, it is within the sound discretion of the trial judge to determine whether or not the photographs have a legitimate evidentiary purpose." Voyles v. State, 362 So.2d 1236, 1241 (Miss.1978).
*25 ¶ 27. In determining whether the photographs of Gill should have been excluded, we look to Rule 403 of the Mississippi Rules of Evidence, which provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The mere fact that photographs depict an unpleasant or gruesome scene is no bar to their admission if they are relevant. Dase v. State, 356 So.2d 1179 (Miss.1978). As a general rule, "the fact that a photograph of the deceased in a homicide case might arouse the emotions of jurors does not of itself render it incompetent in evidence so long as introduction of the photograph serves some legitimate, evidentiary purpose." May v. State, 199 So.2d 635, 640 (1967).
¶ 28. In the present case, the photographs were used in the State's case-in-chief to corroborate the testimony of Officer K.D. Merchant who found the body, and who testified as to the condition of the scene as it existed on the night in question. Other photographs were used in conjunction with the testimony of Dr. Hayne who performed Gill's autopsy, and who testified that his death was caused by bullet wounds to Gill's head, neck and shoulder area. Under the above facts, there was no abuse of discretion on the part of the trial court in finding the photographs were more probative than prejudicial.
V. WHETHER RAMSEY WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
¶ 29. Ramsey cites six instances in which his counsel was allegedly ineffective. He argues counsel was ineffective by: (1) failing to object to leading questions asked of the State's witnesses; (2) failing to object to hearsay; (3) failing to object to the State's closing argument; (4) failing to request a lesser included offense instruction on simple murder; (5) failing to object to the variance between the indictment and the jury instructions; and (6) failing to raise a Batson challenge to the State's alleged improper striking of certain jurors.
¶ 30. The case of Read v. State, 430 So.2d 832, 841 (Miss.1983), established that a convicted criminal is permitted to raise the issue of ineffective assistance of counsel on direct appeal, even if the matter has not been presented to the trial court. When the issue is raised, this Court's review is strictly limited to the appellate record. Id. We may determine the merits of the claim only when "(a) . . . the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed." Id. If these two conditions are not met, this Court should review the other issues in the case; if we otherwise affirm the conviction, we should do so without prejudice to the defendant's right to raise the issue of ineffective assistance of counsel through appropriate post-conviction proceedings. Id.
¶ 31. In the instant case, the parties have not stipulated that the record is adequate for appellate review of the issue of ineffective assistance of counsel. We proceed to determine if the record "affirmatively shows ineffectiveness of constitutional dimensions." If this Court determines that the record affirmatively shows constitutional ineffectiveness, "then it should have been apparent to the presiding judge, who had a duty . . . to declare a mistrial or order a new trial sua sponte." Colenburg v. State, 735 So.2d 1099, *26 1102(¶ 8) (Miss.Ct.App.1999). In other words, for this Court to reach the issue of ineffectiveness of counsel on Ramsey's direct appeal, the record must show that counsel's performance was so deficient that the trial court had a duty to declare a mistrial in order to prevent a mockery of justice. Id. (citing Parham v. State, 229 So.2d 582, 583 (Miss.1969)).
¶ 32. This Court applies the two-part test from Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in reviewing claims of ineffective assistance of counsel. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, the defendant bears the burden of proof that (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Id. This Court looks at the totality of the circumstances in determining whether counsel was effective. Id. There is a strong but rebuttable presumption that counsel's performance fell within the wide range of reasonable professional assistance. Id. For instance, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Cole v. State, 666 So.2d 767, 777 (Miss.1995) (citing Murray v. Maggio, 736 F.2d 279 (5th Cir.1984)). The presumption may be rebutted with a showing that, but for counsel's deficient performance, a different result would have occurred. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985).
¶ 33. We find nothing in the record affirmatively showing ineffectiveness of constitutional dimensions. Further, having reviewed Ramsey's complaints about his trial counsel, we note that Ramsey has failed to show prejudice and has not met his Strickland burden. The law is clear that mere allegations of prejudice will not suffice to meet the burden of proof. Johnston v. State, 730 So.2d 534, 538 (Miss.1997). We find Ramsey's argument regarding ineffective assistance of counsel to be without merit.
VI. WHETHER RAMSEY WAS DENIED HIS RIGHT TO SILENCE WHEN THE STATE'S CLOSING ARGUMENTS REFERRED TO STEVENS AND THE VICTIM AS THE ONLY EYEWITNESSES
¶ 34. Ramsey argues that his right to silence was violated by the State's alleged improper reference to Stevens and Gill as being the only eyewitnesses to the crime. Ramsey claims that these references prejudiced him before the jury.
¶ 35. The challenged portion of the prosecutor's closing arguments is as follows:
Why did  you know, why did [Stevens] come here and testify? Why did we call him? Because we thought you were entitled to hear the only eyewitness  the only live witness that we could produce. The only other witness to this crime Mr. Ramsey took care of. He's not here to testify because Mr. Ramsey made sure that he couldn't testify . . . I think Glen Stevens said he asked him why did he do that. And he said, Man, he knows me. I couldn't get away with this if I didn't kill him.
Ramsey contends that by stating that Stevens was the only eyewitness, the prosecution improperly prejudiced him by calling attention to the fact that Ramsey did not testify on his own behalf. "A defendant has a constitutional right not to take the witness stand. This right becomes meaningless if comment or insinuation can be made reflecting upon his failure to testify." Livingston v. State, 525 So.2d 1300, 1306 (Miss.1988). Therefore, the State is prohibited, either by direct comment, insinuation or innuendo, from commenting on the *27 defendant's failure to testify. However, what constitutes such prosecutorial wrongdoing is to be determined from the facts and circumstances of each case. Peterson v. State, 357 So.2d 113, 117 (Miss.1978).
¶ 36. In the case sub judice, the State referred to the witnesses they could "produce." Our supreme court has held that it was not an improper comment on a capital murder defendant's failure to testify when the prosecution stated that an accomplice's testimony regarding a ripped shirt was the "only testimony" and the "only reliable information" made available. Walker v. State, 671 So.2d 581, 614 (Miss.1995). Based on Walker, we find this issue to be without merit.
VII. WHETHER THE STATE IMPROPERLY STRUCK A JUROR BASED ON RACE
¶ 37. Ramsey next raises the issue that the prosecutor improperly used three peremptory challenges against jurors 13, 14 and alternate juror 28, contending the strikes were made in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It is well settled that a trial court's determinations under Batson are "afforded great deference because they are largely based on credibility." Johnson v. State, 792 So.2d 253, 257(¶ 10) (Miss.2001). "In reviewing an alleged Batson violation, [an appellate court] will not reverse factual findings relating to a Batson challenge unless they are clearly erroneous." Id. However, in this case, the assignment of error is procedurally barred by Ramsey's failure to make a timely objection at trial. Russell v. State, 607 So.2d 1107, 1117 (Miss.1992).
¶ 38. A defendant seeking to establish a Batson violation must demonstrate (1) that he is a member of a "cognizable racial group," (2) that the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race, and (3) that the facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987). Once the prima facie showing is made, the prosecutor must offer "`a clear and reasonably specific' explanation of his `legitimate reasons' for exercising the challenges." Id. (citing Batson, 476 U.S. at 98, n. 20, 106 S.Ct. 1712).
¶ 39. In the present case, Ramsey failed to raise a Batson challenge at trial. The trial court therefore did not have the opportunity to make any fact-findings for this Court to review. Accordingly, Ramsey's Batson challenge is without merit.
VIII. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING DEFENSE COUNSEL TO USE THE CO-DEFENDANT'S COMPLETE JUVENILE RECORD TO IMPEACH CO-DEFENDANT'S TESTIMONY
¶ 40. Ramsey contends that although he was able to question Stevens about his juvenile record, the impeachment was limited because the scope of cross-examination was inadequate. We find this argument to be without merit.
¶ 41. The right to cross-examine as to prior convictions in order to show bias or interest was given constitutional dimension in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Because the rule announced in that case is a right guaranteed an accused under the Sixth Amendment, it should be interpreted liberally to favor the accused. Id. Davis, however, does not give the accused the absolute right to require a witness to disclose any prior convictions to attack his credibility simply because he had been convicted of a criminal offense. Id.
*28 ¶ 42. Under Mississippi Code Annotated § 43-21-561(5) (Supp.1979):
No adjudication upon the status of any child shall operate to impose any of the civil disabilities ordinarily imposed on an adult because of a criminal conviction, nor shall any child be deemed a criminal by reason of adjudication, nor shall that adjudication be deemed a conviction. A person in whose interest proceedings have been brought in the youth court may deny, without any penalty, the existence of those proceedings and any adjudication made in those proceedings. Except for the right of a defendant or prosecutor in criminal proceedings and a respondent or a youth court prosecutor in youth court proceedings to cross-examine a witness, including a defendant or respondent, to show bias or interest, no adjudication shall be used for impeachment purposes in any court.
According to the statute, a youth court adjudication can be used to cross-examine a witness in a criminal proceeding to show "bias or interest."
¶ 43. Our review of the trial transcript shows that Ramsey's counsel was able to adequately question Stevens concerning his relevant juvenile record. The record shows that Ramsey's counsel asked Stevens about two particular instances where Stevens was ordered to attend training school while a youth in the State of Mississippi. One instance was deemed relevant by the trial court because it established the time and place where Stevens met Ramsey. The other instance was Stevens' charge with auto theft, which the court found relevant to show Stevens had a propensity for dishonesty and a motive to steal Gill's SUV. As shown by the record, Ramsey was permitted to and did question Stevens about these aspects of his juvenile record. Therefore, Ramsey's argument is without merit.
IX. WHETHER THE COURT ERRED BY FAILING TO INSTRUCT THAT THE TESTIMONY OF AN ACCOMPLICE SHOULD BE VIEWED WITH CAUTION
¶ 44. Ramsey contends that the trial court should have instructed the jury to view Stevens's testimony as an accomplice with caution. We find this argument to be without merit.
¶ 45. The trial judge is afforded discretion as to whether or not to give a cautionary jury instruction. Hussey v. State, 473 So.2d 478, 480 (Miss.1985). We will not disturb a lower court's finding absent an abuse of discretion. Id. For an abuse of discretion to be found, it must be "a rare case with unusual circumstances which makes the evidence virtually irreconcilable with the verdict except for the testimony of the accomplice." Id.
¶ 46. As a general rule, where accomplice testimony is presented by the State in a criminal case, the court should instruct the jury to weigh the testimony with caution. Wansley v. State, 734 So.2d 193(¶ 18) (Miss.Ct.App.1999). However, a trial court is under no duty to instruct the jury sua sponte, nor is a court required to submit instructions in addition to those prepared by the parties. Giles v. State, 650 So.2d 846, 854 (Miss.1995). In the present case, Ramsey did not submit such an instruction to the court, nor did he request one. Because Ramsey failed to submit or request such an instruction, this argument is procedurally barred.
¶ 47. Notwithstanding the procedural bar, this issue is without merit. Stevens was indicted as an accessory after the fact, not as an accomplice. Stevens's testimony was corroborated by evidence such as the shell casings found in Ramsey's home, the SUV keys found on Ramsey's person, and the handgun found in the lot *29 where Ramsey was arrested. The trial court discussed the issue of giving the jury a cautionary instruction, and based on the overwhelming evidence, decided the instruction was not necessary. We find no error.
X. WHETHER THE COURT ERRED BY FAILING TO GRANT A NEW TRIAL WHERE THE EVIDENCE USED TO CONVICT RAMSEY MAY HAVE BEEN INSUFFICIENT, BIASED AND PREJUDICIAL
¶ 48. It appears from Ramsey's argument that he challenges both the weight and sufficiency of the evidence. An appellate court's authority to interfere with the jury's verdict is quite limited. Upon review of the sufficiency of the evidence, we consider all the evidence in the light most consistent with the verdict and give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. Roberson v. State, 595 So.2d 1310, 1318 (Miss.1992). If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge is required. Id. But,
[o]n the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
Roberson v. State, 595 So.2d 1310, 1318 (Miss.1992) (quoting McFee v. State, 511 So.2d 130, 133-134 (Miss.1987)). This standard is also applicable in capital cases. Mackbee v. State, 575 So.2d 16, 36 (Miss. 1990).
¶ 49. Further, it is well-settled in Mississippi that in order to make a determination that the jury's verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse that verdict only when it is determined that the circuit court has abused its discretion in failing to grant a new trial. Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)).
¶ 50. Our supreme court has stated that "a valid Section 97-3-19(2)(e) capital murder conviction must be supported by evidence legally sufficient to support a conviction of both the murder and the underlying felony had either been charged alone." Fisher v. State, 481 So.2d 203, 212 (Miss. 1985).
¶ 51. This Court held in Smith v. State, 904 So.2d 1217, 1220(¶ 8) (Miss.Ct.App. 2004), that evidence presented as to spent shell casings found in the parking lot of a nightclub and identical shell casings found at the defendant's residence, along with testimony placing the defendant at the nightclub, was among evidence sufficient to support a jury finding of guilt of murder. In the present case, similar evidence was sufficient to support a jury finding of Ramsey's guilt of capital murder. Stevens, an eyewitness, testified that Ramsey was in fact the shooter. Shell casings were found at Ramsey's home in his chest of drawers, Gill's personal effects were found in a garbage bag that Ramsey's mother had attempted to throw away, and the spent cartridges matched the type of the gun that was used in the killing. Police officers testified as to the crime scene, the arrest of Ramsey as he was found walking towards the stolen SUV days after the crime, and the fact that the gun used *30 to kill Gill was found lying in the grass near the spot where Ramsey was arrested.
¶ 52. Considering this evidence in the light most favorable to the verdict, we find there was substantial evidence of such quality to support Ramsey's guilt of capital murder with the underlying felony of robbery. Moreover, based on the evidence discussed above that was presented against Ramsey, the verdict was not against the overwhelming weight of the evidence. Thus, we find that Ramsey's arguments to be without merit and accordingly, we uphold his conviction of capital murder and robbery.
¶ 53. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF COUNT I, CAPITAL MURDER, AND SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE OR ANY FORM OF EARLY RELEASE, AND OF COUNT II, ROBBERY, AND SENTENCE TO SERVE FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
KING, C.J., MYERS AND LEE, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.