KING, C.J., for the Court.
 

 ¶ 1. Demarious Latwan Banyard was convicted of capital murder for killing Robin Eric Ballad during the commission of an armed robbery. The Circuit Court of Hinds County sentenced Banyard to serve a term of life imprisonment, without eligibility for parole, in the custody of the Mississippi Department of Corrections (MDOC). Banyard appeals his conviction and raises the following three issues:
 

 I. Whether the trial court erred by refusing to give Banyard’s jury instructions regarding manslaughter as a lesser-included offense of capital murder,
 

 II. Whether the trial court erred by refusing to give Banyard’s jury instruction regarding duress as a defense to capital murder, and
 

 III. Whether the trial court erred by denying Banyard’s motion to appoint an expert to testify regarding influence and intimidation.
 

 Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On February 24, 2003, a group of teenagers was playing basketball at the Westwick Apartments in Jackson, Mississippi. After the basketball game, an unidentified male ran to the basketball court; informed the other teenagers that Ballard, the pizza deliveryman, was at the apartment complex; and suggested that they rob him.
 

 ¶ 3. Upon hearing the news, nineteen-year-old Dennis Ragsdale, Jr., retrieved a gun from his jeep. Traven Kyser, one of the teenagers at the basketball court, testified that Ragsdale cocked the gun and took out the clip. Then, Ragsdale approached thirteen-year-old Banyard and said, “Let’s go rob the pizza man.” Kyser stated that Banyard looked hesitant to oblige Ragsdale’s request, but Ragsdale “push[ed]” Banyard to participate.
 

 ¶ 4. Banyard testified that he did not want to rob the pizza deliveryman. However, he was afraid of Ragsdale because Ragsdale had a gun, and he and Ragsdale were involved in a physical altercation earlier that year. Banyard testified that Ragsdale handed the gun to him and told him that it was unloaded. Then, Ragsdale walked really close to Banyard as they approached Ballard’s car, which was resting at a stop sign at the apartment complex’s entryway.
 

 ¶ 5. When they got to the car, Banyard went to the driver’s side, and Ragsdale went to the passenger side. Ragsdale demanded that Ballard give him the money. Ragsdale was unsuccessful in his attempt, so he went around to the driver’s side of the car. Banyard testified that while handing the gun to Ragsdale, his finger tapped the trigger, and the gun fired. Banyard testified that Ragsdale began laughing and then fled the scene, and Ban-yard also ran away.
 

 ¶ 6. Several of the apartment complex’s residents saw the boys running from the entryway. Shameka Williams testified that she saw Banyard walk to the driver’s side of the car and stick a gun into the car. However, Williams did not hear the gunshot because she was sitting in her car with the radio on. Monica Dear testified that while waiting in the car for her boyfriend, Ray Green, she saw Ballard leaving
 
 *711
 
 the complex and saw a group of boys running toward the entryway. Dear told Green that she saw a boy running with a gun. However, Green testified that he did not see a boy with a gun.
 

 ¶ 7. Green and Dear drove to the entryway to exit the apartment complex and pulled up behind a black Chevy Malibu, which was resting at the stop sign. The black Chevy Malibu did not move, and a line of cars began to form at the entryway. Impatient, several drivers began blowing their car horns. Green testified that he got out of his car to see what was going on. When he approached the black Chevy Malibu, he saw Ballard had a bullet wound in his neck and was slumped over and bleeding. Witnesses called the police and stayed at the apartment complex until an ambulance arrived.
 

 ¶ 8. Ballard was pronounced dead at the scene. The police questioned witnesses, and they identified Banyard as a suspect. Banyard turned himself in to the police later that night and gave a statement, which implicated himself and Ragsdale in the crime.
 

 ¶ 9. A Hinds County grand jury indicted Banyard and Ragsdale for capital murder and armed robbery. Banyard filed a motion to sever, which the trial court granted. Banyard also filed a motion to transfer jurisdiction to youth court, which the trial court denied. Banyard filed another motion to appoint an expert to testify regarding his propensity to be vulnerable to suggestion and influence. The trial court denied the motion, stating that the issues of influence and intimidation were not relevant to Banyard’s capital murder charge. The trial court also denied several of Ban-yard’s proposed jury instructions — five jury instructions regarding manslaughter as a lesser-included offense of capital murder and one jury instruction regarding duress as a defense to capital murder.
 

 ¶ 10. On August 7, 2006, a Hinds County jury found Banyard guilty of capital murder, and he was sentenced to serve a term of life imprisonment, without eligibility for parole, in the custody of the MDOC. Banyard filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the trial court denied. Aggrieved, Banyard timely filed this appeal.
 

 ANALYSIS
 

 I. Whether the trial court erred by refusing to give Banyard’s jury instructions regarding manslaughter as a lesser-included offense of capital murder.
 

 ¶ 11. This Court reviews the trial court’s refusal of jury instructions to determine whether the jury instructions given were fair instructions, which accurately stated the law.
 
 See Foley v. State,
 
 914 So.2d 677, 686 (¶ 14) (Miss.2005). This Court reads the jury instructions actually given as a whole.
 
 Wells v. State,
 
 913 So.2d 1053, 1059 (¶ 21) (Miss.Ct.App.2005) (quoting
 
 Conners v. State,
 
 822 So.2d 290, 292 (¶ 5) (Miss.Ct.App.2001)). If the jury instructions given fairly announce the law of the case and create no injustice, no reversible error will be found.
 
 Id.
 

 ¶ 12. Banyard argues that the trial court erred by refusing his proposed jury instructions regarding manslaughter as a lesser-included offense of capital murder. A defendant is entitled to have jury instructions that present his theory of the case.
 
 Mayes v. State,
 
 925 So.2d 130, 133 (¶ 6) (Miss.Ct.App.2005). “A lesser[-]included[-]offense instruction should be given, on request, ‘if a rational’ or a ‘reasonable’ jury could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser[-]included offense.”
 
 Arthur v. State,
 
 735
 
 *712
 
 So.2d 213, 218 (¶ 25) (Miss.1999) (quoting
 
 Ballenger v. State,
 
 667 So.2d 1242, 1254 (Miss.1995)). However, the trial court may refuse a jury instruction because the instruction incorrectly states the law, is duplicative, or there is no evidentiary basis for giving the instruction.
 
 Mayes,
 
 925 So.2d at 133 (¶ 6).
 

 ¶ 13. Banyard claims that he accidentally shot and killed Ballard. In line with his theory, Banyard requested that the trial court give five jury instructions regarding manslaughter as a lesser-included offense of capital murder — D-9, D-10, D-ll, D-12, and D-14. The trial court refused to give the instructions, stating that they were improper statements of the law, and we agree.
 

 ¶ 14. Banyard killed Ballard during the commission of a robbery. Whether Ban-yard intended to kill Ballard is not relevant in this case.
 
 See
 
 Miss.Code Ann. § 97 — 3—19(2)(e) (Rev.2006);
 
 see also Ramsey v. State,
 
 959 So.2d 15, 23 (¶ 17) (Miss.Ct.App.2006) (finding that the statute does not require the State to prove that the defendant intended to kill the victim during the course of a robbery).
 

 ¶ 15. Further, Mississippi Code Annotated section 97-3-27 (Rev.2006) provides the following:
 

 The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony,
 
 except those felonies enumerated in Section 97-3-19(2)(e) and (f),
 
 or while such other is attempting to commit any felony besides such as are above enumerated and excepted, shall be manslaughter.
 

 (Emphasis added). Section 97-3-27 precludes a manslaughter instruction for those felonies specifically enumerated in Mississippi Code Annotated section 97-3-19(2)(e), one of which is robbery.
 

 ¶ 16. Since Banyard killed Ballard during the commission of a robbery, he was not entitled to a manslaughter instruction.
 
 See Simmons v. State,
 
 805 So.2d 452, 474 (¶ 32) (Miss.2001) (citing
 
 Burns v. State,
 
 729 So.2d 203, 225 (¶ 103) (Miss.1998)). Therefore, we find that the trial court did not err by refusing Banyard’s lesser-included-offense instructions regarding manslaughter. This argument is without merit.
 

 II. Whether the trial court erred by refusing to give Banyard’s duress instruction.
 

 ¶ 17. Banyard argues that the trial court erred by refusing his duress instruction because he was entitled to present his defense to the jury. Conversely, the State argues that the trial court properly refused the duress instruction because duress is not a defense to murder. The State also contends that there is no evidence of duress in this case.
 

 ¶ 18. As discussed in the previous assignment of error, a defendant is entitled to have a jury instruction that presents his theory of the case.
 
 Mayes,
 
 925 So.2d at 133 (¶ 6). However, the trial court may refuse the instruction if it incorrectly states the law or there is no evidentiary basis for giving the instruction.
 
 Id.
 

 ¶ 19. Banyard’s proffered jury instruction D-13 reads as follows:
 

 The Court instructs the jury that in order for duress to be a defense to a criminal charge, the impelling danger must be present, imminent, and impending, and such a nature as to induce in a person well-grounded apprehension of death or serious bodily harm if the act is not done and that the danger to the defendant must be continuous.
 

 If you find from the evidence that Demarious Banyard acted under coer
 
 *713
 
 cion and duress and the coercion and duress was created by Dennis Ragsdale and that the coercion and duress was present, imminent, and impending and induced Demarious Banyard[’s] apprehension of death or serious bodily injury if he did not comply with Dennis Rags-dale’s wishes and that such apprehension was continuous throughout the commission by him of the criminal act, then you should find Demarious Banyard not guilty of capital murder.
 

 If you find Demarious Banyard not guilty of capital murder, then you may proceed with your deliberations whether he is guilty of manslaughter.
 

 If you find from the evidence that Robin Ballard was killed by the act, procurement, or culpable negligence of Demarious Banyard and without authority of law, then you should find him guilty of manslaughter.
 

 The trial court denied the instruction, finding that it was an improper statement of the law. The trial court also stated that defense counsel could argue duress to the jury. However, the trial court refused to give the duress instruction because the trial court was giving an instruction on murder as a lesser-included offense and determined that this was sufficient.
 

 ¶ 20. We find that instruction D-13 was an improper statement of the law. Ban-yard’s duress instruction also included a manslaughter instruction. As discussed in the previous assignment of error, Banyard was not entitled to a manslaughter instruction in this case because he killed Ballard during the commission of a robbery.
 
 See Simmons,
 
 805 So.2d at 474 (¶ 32). Therefore, the trial court did not err by refusing to give instruction D-13 because it was an improper statement of the law.
 

 ¶ 21. We also find that there was not an evidentiary basis to support Banyard’s duress instruction. Banyard claims that he participated in the robbery under duress created by Ragsdale. Banyard testified that he was afraid of Ragsdale because Ragsdale had beaten him up earlier that year, and he was afraid that Ragsdale would shoot him with the gun. However, Banyard also testified that Ragsdale did not threaten to kill him or anyone in his family. Banyard simply stated that Rags-dale was looking serious and mean when he asked him to rob Ballard. Banyard also testified that Ragsdale placed the gun, which he believed was unloaded, in his hands. Banyard stated that he was afraid that Ragsdale would put a bullet in the gun and shoot him. However, Banyard had the weapon in his hands. The testimony does not indicate that Ragsdale had another gun or bullets on his person. Based on the foregoing, we find that Ban-yard did not present any evidence that the alleged threat was, as stated in his proposed jury instruction, an “impelling danger [that was] present, imminent, and impending, and such a nature as to induce in a person well-grounded apprehension of death or serious bodily harm if the act is not done,” and he failed to present evidence that he did not have a reasonable opportunity to avoid participating in the crime.
 

 ¶ 22. This Court recognizes that a trial court should give a defendant’s jury instruction that presents his theory of the case when the defendant has presented sufficient evidence to support his theory.
 
 Walker v. State,
 
 913 So.2d 198, 235-36 (¶ 138) (Miss.2005). However, “[wjhether [the defendant] has met this standard is a matter of law and not a matter of fact for the jury to decide, unless [the defendant] presented sufficient evidence in the record to support [the] same.”
 
 Id.
 
 at 236 (¶ 138). Ultimately, jury instruction D-13 was an improper statement of the law, and Ban-yard failed to present sufficient evidence
 
 *714
 
 to warrant giving a duress instruction. After reviewing the jury instructions actually given as a whole, we find that the instructions given fairly announced the law and did not create an injustice to Banyard. Therefore, we find that the trial court did not err by refusing proposed jury instruction D-13.
 

 III. Whether the trial court erred by denying Banyard’s motion to appoint an expert to testify regarding influence and intimidation.
 

 ¶ 23. This Court reviews the trial court’s denial of expert assistance under an abuse of discretion standard.
 
 See Flora v. State,
 
 925 So.2d 797, 805 (¶ 11) (Miss.2006). The trial court must consider a motion for expert assistance on a case-by-case basis.
 
 See Gray v. State,
 
 926 So.2d 961, 976-77 (¶ 50) (Miss.Ct.App.2006). The trial court, in its sound discretion, should grant a motion for expert assistance upon a showing of substantial need.
 
 Flora,
 
 925 So.2d at 805 (¶ 11) (citing
 
 King v. State,
 
 784 So.2d 884, 888 (¶ 17) (Miss.2001)). This Court will not disturb the trial court’s denial of a motion for expert assistance unless “the defendant was denied due process whereby the trial was fundamentally unfair.”
 
 Id.
 
 (citing
 
 Richardson v. State,
 
 767 So.2d 195, 197 (¶ 7) (Miss.2000)).
 

 ¶ 24. In its motion, defense counsel asked the trial court to appoint Dr. Criss Lott to evaluate Banyard regarding his susceptibility to intimidation, suggestion, and influence, claiming that the results would go to negate Banyard’s criminal intent to participate in the robbery. The trial court denied the motion, stating that the issue was not relevant. In addition, the trial court stated that Banyard’s results from his mental examination showed that he knew right from wrong, and he was not mentally ill.
 

 ¶ 25. Banyard argues that the trial court erred by refusing to appoint the expert because Banyard’s age and defense of duress presented a unique case, and the expert testimony was necessary to aid the jury. Conversely, the State argues that the trial court did not err by refusing to appoint the expert, stating that expert assistance was not necessary since there was no evidence of duress in Banyard’s case.
 

 ¶ 26. Based on our review of the record, we fail to see how the trial court’s denial of Banyard’s motion to appoint an expert to testify regarding Banyard’s susceptibility to intimidation, suggestion, and influence was fundamentally unfair. Banyard was allowed to present this evidence to the jury. Banyard testified that he was only thirteen years old at the time of the incident and that Ragsdale was nineteen years old. Banyard also testified that he was afraid of Ragsdale because Ragsdale had beaten him up earlier that year. This evidence was sufficient to present Ban-yard’s theory of intimidation to the jury. Expert testimony was not necessary to explain this point.
 

 ¶27. We find that expert assistance was not necessary to explain Banyard’s theory of susceptibility to intimidation, suggestion, and influence. We cannot find that Banyard’s trial was fundamentally unfair. Therefore, we find that the trial court did not err by denying Banyard’s motion to appoint the expert.
 

 CONCLUSION
 

 ¶ 28. We find that Banyard was not entitled to a manslaughter instruction in this case because he killed Ballard during the commission of a robbery. We also find that Banyard was not entitled to an instruction on duress because the instruction was an improper statement of the law, and he failed to present sufficient evidence to warrant giving the instruction. Last, we
 
 *715
 
 find that expert assistance was not necessary to explain Banyard’s potential susceptibility to intimidation, suggestion, and influence. Therefore, we find that the trial court did not err in its rulings below and affirm.
 

 ¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR. IRVING, J., CONCURS IN PART AND RESULT WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.