734 So.2d 193 (1999)
Marion Ornellist WANSLEY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01438 COA.
Court of Appeals of Mississippi.
January 26, 1999.
*194 Edmund J. Phillips, Jr., Newton, Robert N. Brooks, Carthage, Attorneys for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
EN BANC:
COLEMAN, J., for the Court:
¶ 1. Pursuant to the trial of the appellant, Marion Ornellist Wansley, on an indictment for the felony of burglary of a dwelling house "of the property of R.P. Howell, with the ... burglarious intent to take, steal and carry away certain goods... in said dwelling house and being the personal property of R.P. Howell ... kept therein for his use and deposit ....," a jury in the Circuit Court of Neshoba County returned a verdict of "Guilty as charged." Based on the jury's verdict of guilty, the trial court entered its judgment of conviction in which it sentenced Wansley to serve a term of ten years in the Mississippi Department of Corrections. Ms. Wansley has appealed from this judgment and sentence to present for this Court's analysis and resolution the following two issues, which this Court quotes verbatim from Ms. Wansley's brief:
1. The Court erred in admitting into evidence two of the statements made by appellant without requiring that all be introduced.
2. The Court erred in failing to instruct the jury that the testimony of accomplice Joey Farve should be weighed with great caution.
Nevertheless, we affirm the trial court's judgment and sentence imposed on Ms. Wansley.

I. FACTS
¶ 2. Our recitation of the facts is a synthesis of the testimony consistent with the jury's verdict that Ms. Wansley was guilty of the burglary of Robert P. Howell's dwelling. Portions of our recitation are quoted directly from the record. A police officer for the City of Union referred to Robert P. Howell as "Colonel Howell," and so will we.
¶ 3. Around 9:30 a. m. on Sunday, April 13, 1997, Colonel Howell left his home on the Neshoba County side of County Line Street in the City of Union to attend church. Within a few minutes of noon, Howell returned from church. He parked his vehicle at his neighbor's house located across the street from his house so that he could walk his neighbor's dog. While Howell was walking his neighbor's dog, he crossed the street and approached the west end of his house. There, he "heard some ... low voices;" next, he "observed three people running across the vacant lot *195 to the rear of [his] house." Although Colonel Howell could not identify any of these three persons, the one who ran first had "a dark colored skin," and two African Americans followed him.
¶ 4. Colonel Howell and his neighbor entered his home through its kitchen door. As he opened it, he "observed many items scattered across the kitchen floor," which he recognized "had come from a billfold." Howell next walked into the den, where he observed "the sliding doors to the patio, open." Howell knew that he had not left the doors open when he left for church. He noticed that a VCR and a CD player which "had been unplugged from the TV area" were in a chair "near the open door" to the patio from the den. Colonel Howell observed that the sliding-door frame had been bent near the latch.
¶ 5. Colonel Howell then entered the utility room "which [led] into the kitchen." There, he "found the screen ripped and the sliding window to the door ... cracked in the entry and ... open." The intruder "had reached inside and unlocked ... the kitchen door." The first item which Howell knew was missing was a .22 caliber rifle that he kept near the kitchen door. Howell called both 911 and the police station in Union. Union Police Officer James Hanna was enjoying his Sunday lunch at home when both his son, "who work[ed] for the ABC," and another unidentified person called him to report the burglary of Colonel Howell's home.
¶ 6. After Officer Hanna arrived at Colonel Howell's home and confirmed the burglary, someone told him that "Heather Sharp had seen someone leaving Colonel Howell's house." Armed with this information, Officer Hanna was looking for Heather Sharp when he saw Mr. Johnson, who gave him some additional information about the burglary. Based on Mr. Johnson's information, Officer Hanna drove north of Union, "outside the city limits," to a wooded area where he "found fresh tracks." After Officer Hanna "started looking down through the woods," he "saw the wet leaves had been shuffled around, where someone had been walking in the wet leaves." There he "raked some leaves back and saw guns, at least one long gun [he] knew was there at that time." Colonel Howell later identified the "long gun" as the .22 caliber rifle which he had found missing from beside his kitchen door.
¶ 7. Officer Hanna also determined from his inspection of the car tracks left after the car had "backed out" that the "left front tire print ... was slick." After Neshoba County deputy sheriffs had secured the scene in the woods outside the Union corporate limits, Officer Hanna contacted "ABC Agent 32." "ABC Agent 32" told Officer Hanna that he had located a car which matched the description that Mr. Johnson had given Officer Hanna parked at the Union Square Apartments. "ABC Agent 32" further advised Officer Hanna that the car, which Mr. Johnson had described as "a tan car with a kind of sloped off back with three people in it," had a slick tire on the left front.
¶ 8. After Officer Hanna arrived at the Union Square Apartments, he located an automobile that matched this description. However, no one there claimed ownership of the automobile. Officer Hanna checked the registration of the Hinds County license plate and learned that it was "registered to Marion Wansley." Around four o'clock that same afternoon, Sunday, April 13, Officer Hanna arrested Marion Wansley, whom he had not previously known, and took her to the police station in Union. After Officer Hanna advised Ms. Wansley of her Miranda rights not to incriminate herself and after he was satisfied that Ms. Wansley understood those rights, which understanding she demonstrated by signing a waiver of those rights, he handed her a sheet of paper. In her own handwriting, Ms. Wansley gave Officer Hanna a statement in which she admitted her participation in the burglary of Colonel Howell's home, although she denied entering it. Instead, Ms. Wansley wrote that Joey Allen *196 Farve had entered the home while she stood outside as a "lookout."
¶ 9. Two days later, after Officer Hanna had again Mirandized Ms. Wansley, she gave him a second statement, this one oral, in which she admitted that she had entered Colonel Howell's home with Farve and a juvenile. Pursuant to Ms. Wansley's written consent, Officer Hanna searched her car and found a "buck knife" beneath its driver's seat. Colonel Howell later identified it as the knife which he kept in the "radio room" of his home.

II. TRIAL
¶ 10. This was a no-nonsense, straight forward trial which began on the morning of November 12, 1997 and concluded at 2:30 the same afternoon when the jury returned its verdict of "Guilty as charged." The State called four witnesses in the following order: (1) Robert P. Howell, (2) Heather Sharp, (3) Joey Allen Farve, and (4) Union Police Officer James Hanna. We gleaned our recitation of the facts from the testimony of Colonel Howell and Officer Hanna. Heather Sharp testified that as she was "on [her] way to [her] parents' house up North Street" around 12:15 p.m., she saw "three individuals running across the street." She explained, "There was an Indian male, a Black female, and a Black male." Ms. Sharp elaborated that the "Indian male ... had long, dark hair. He was carrying a gun, a rifle." She located their running across the street near the intersection of North Street with County Line Street, on which Colonel Howell's home was located. Without Ms. Wansley's counsel's objection, Ms. Sharp opined, "They would have been coming from, maybe, [Colonel Howell's] back yard." Under cross-examination, Ms. Sharp acknowledged that she did not know the names of any of these three persons whom she had seen running, although she "had seen the Indian male around town."
¶ 11. For its third witness, the State called Joey Allen Farve. Farve established that he lived on "16 going towards the casino." He testified that a juvenile, Ms. Wansley, and he entered Colonel Howell's home around noon on April 13, 1997. According to Farve, Ms. Wansley cut the screen which Colonel Howell had located in the utility room with a screwdriver, reached in and unlocked the door, and walked inside the Howell residence. Farve testified that Ms. Wansley entered first. According to Farve's testimony, once all three were inside, Ms. Wansley "grabbed ... a .22 pistol," the juvenile "grabbed a rifle," and Farve "took two two-dollar bills and a necklace and a jar of change." Farve estimated that they were inside Colonel Howell's residence "thirty, maybe forty-five minutes." Farve verified that they took these items to the woods where they buried them "under a mulch of leaves." Under Ms. Wansley's counsel's cross-examination, Farve acknowledged that he had entered a plea of guilty to this crime for which both Ms. Wansley and he had been jointly indicted and that the trial court had sentenced him to serve five years. Initially Farve stated that he "just received a plea-bargain and ... was asked to testify." Under further cross-examination, Farve replied, "Yes, sir," to defense counsel's question, "But, you agreed to plead to five years and testify in this case; is that correct?"
¶ 12. Officer Hanna was the State's last witness. We have related briefly his testimony about his having taken two statements, the first written and the second oral, from Ms. Wansley. The trial judge conducted a hearing outside the jury's presence to determine whether both statements were freely and voluntarily given by Ms. Wansley. After both the State and defense counsel examined Officer Hanna about the circumstances surrounding his obtaining these two statements and Ms. Wansley's consent to search her automobile, the trial judge found that "[Ms. Wansley] was properly given the Miranda warnings, and with knowledge of her rights, she waived them, and she voluntarily made a statement of admission."
*197 ¶ 13. However, based on Ms. Wansley's attorney's objection that a portion of her handwritten statement implicated her in another crime for which she was not then on trial, the trial judge ordered the State to delete that portion from the confession. The portion of Ms. Wansley's confession which the trial judge admitted into evidence read as follows:
Rodney [Gill] & I was [sic] on our way back to Union from Newton when we saw Joe [sic] He ask [sic] us to walk over to the white house to look out for him, then someone came, and he said to run so we did he had 2 guns and asked me to take him home, [deleted portion]... [sic] So we left and he ask me to take him to this spot so he could put the guns there. So I ask him why and he said that his mom doesn't want him to bring guns in the house. He covered them up and we left.

III. RESOLUTION OF THE ISSUES

A. Ms. Wansley's first issue
¶ 14. For her first issue, Ms. Wansley asserts that "[t]he Court erred in admitting into evidence two of the statements made by Appellant without requiring that all be introduced." The following excerpt from Ms. Wansley's counsel's cross-examination of Officer Hanna is the basis for her first issue:
Q. All right. Now, there's two statements that you have testified about, the written one on the thirteenth and the oral one on the fifteenth.
A. Right.
Q. Is there another statement?
A. On her?
Q. Yes, sir.
A. Not by me.
Q. Okay. Well, when I asked you if there was anyone else around, you said not on this statement.
A. There are other statements, but I was not present.
Q. You weren't present for those?
A. No, sir.
Ms. Wansley argues that "[b]y combining only the first and last [statements] and omitting others, the prosecutor left the possibility for the jury to misunderstanding the meaning of the statements." The State counters Ms. Wansley's concern that "[c]ombining the two statements may have misled the jury," by asserting the "presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to the appellant Court." See Edlin v. State, 533 So.2d 403, 410 (Miss.1988) (holding that "[i]t is the duty of the appellant to overcome the presumption of the correctness of the trial court's judgment by demonstrating some reversible error.") (citation omitted). The State further contends that "a trial judge cannot be put in error on a matter not presented to him for his decision," and cites Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss.1994).
¶ 15. This Court accepts the foregoing counter-arguments presented by the State as sufficient to resolve Ms. Wansley's first issue against her. The State also contends that "[i]n the absence of knowing what the other statement contained, it is impossible to know what effect it would have had upon the jury." The State then rightly concludes that "this Court has nothing before it to examine whether or not Wansley was harmed or helped in her defense."
¶ 16. This Court finds several distinct grounds on which to base its decision that Ms. Wansley's first issue is procedurally barred. First, other than only a very general citation to Miranda v. Arizona, 384 U.S. 436, 469, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in which the United States Supreme Court opined that when a right "indispensable to the protection of the Fifth Amendment privilege" is waived, it must be protected against the possibility of resulting injustice. In Ellis v. Ellis, 651 So.2d 1068, 1073 (Miss.1995), the Mississippi Supreme Court advised the bar:

*198 The merits of this assigned error will not be reached for several reasons. First, [the Appellant] failed to cite any authority in support of this error and this Court has consistently held that an unsupported assignment of error will not be considered.
¶ 17. The most compelling procedural bar isas the State observesthat this Court has no idea from even a quite tedious review of the record what the content of the other statement was. The Mississippi Supreme Court has explained that "[o]ur law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved." Lambert v. State, 574 So.2d 573, 577 (Miss. 1990). While the trial court somewhat sua sponte conducted its own suppression hearing on the admissibility of Ms. Wansley's written and oral statements to Officer Hanna, Ms. Wansley's counsel never presented this issue for its resolution. Ms. Wansley's first issue is procedurally barred from appellate review for more than one reason; thus, this Court declines to review it further.

B. Ms. Wansley's second issue
¶ 18. Ms. Wansley adopts as her second issue the proposition that "[t]he Court erred in failing to instruct the jury that the testimony of accomplice Joey Farve should be weighed with great caution." In support of her position on her second issue, Ms. Wansley offers the following argument:
Where accomplice testimony is presented by the prosecution in a criminal case, an instruction should be given the jury to weigh such testimony with great caution; Burke v. State, 576 So.2d 1239, 1242 (Miss.1991); especially where there is some question as to the reasonableness of the testimony. Green v. State, 456 So.2d 757, 758 (Miss.1984). In the case before the Court, Farve's lie about the rifle and other questionable testimony render suspect the veracity of his entire statement.
¶ 19. The State counters Ms. Wansley's argument offered in support of her second issue as it countered her argument on her first issue, i.e., her second issue is procedurally barred because the record is clear that her defense counsel did not request that the trial judge grant such an instruction. The record is clear that Ms. Wansley's counsel filed no instruction in which the trial court would have instructed the jury to weight Joey Farve's testimony as an accomplice with great caution.
¶ 20. "The case law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender." Conner v. State, 632 So.2d 1239, 1254 (Miss.1993). In Ballenger v. State, 667 So.2d 1242, 1252 (Miss.1995), the appellant complained that the trial judge erred by refusing to grant a particular instruction, Instruction No. 22. While a copy of this particular instruction was included in the record, it bore no evidence that it had been filed or that the appellant's counsel had asked the trial court to consider it at all. Id. The Mississippi Supreme Court declined to find any error and explained:
Although D-22 is found in the court papers it is not marked in any fashion as being refused, given or withdrawn. There is no mention of D-22 in the transcript. Counsel did not draw it to the attention of the trial court during the discussion of jury instructions nor in Ballenger's motion for new trial. It is the appellant's duty to make sure a claimed error is properly preserved on record. This failure to make a sufficient record concerning instruction D-22 precludes Ballenger from complaining now that the instruction was not given.
Id. (citations omitted). Ballenger is more persuasive in the case sub judice because the record is bare of any "accomplice instruction." *199 Ms. Wansley's second issue is also procedurally barred.
¶ 21. However, Mississippi Rule of Appellate Procedure 28(a)(3) provides: "No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified." (emphasis added). Rule 28(a)(3) permits this Court to ignore the procedural bar to our review of Ms. Wansley's second issue only if this Court can classify the trial court's failure to instruct the jury about weighing Joey Farve's testimony as an accomplice with great caution as "plain error." In Burke v. State, 576 So.2d 1239, 1242 (Miss.1991), the supreme court noted that in Holmes v. State, 481 So.2d 319, 323 (Miss.1985), it "delineated a two-part test to determine whether a trial judge abused his discretion [in refusing to grant a cautionary instruction about an accomplice's testimony]. First, was the witness in fact an accomplice, and secondly, was his testimony without corroboration?"
¶ 22. In the case sub judice, Joey Farve was an accomplice; thus, the thrust of Ms. Wansley's second issue satisfies the first part of the Holmes test. Was Joey Farve's testimony about Ms. Wansley's participation in the burglary of Colonel Howell's home uncorroborated? Aside from Farve's testimony, the following facts established by the State's evidence corroborate Ms. Wansley's participation in the burglary: (1) registration of the Hinds County license plate on the automobile found in the apartment complex in Ms. Wansley's name, (2) the slick left front tire on this car was consistent with Officer Hanna's testimony that the left front tire track which he observed where he recovered the .22 caliber rifle from beneath a pile of wet leaves was slick, (3) Colonel Howell's identification of that same .22 caliber rifle as the one taken from near the kitchen door, (4) Colonel Howell's identification of the buck knife which Officer Hanna recovered from beneath the front seat of that automobile as his knife which he had kept in the "radio room" of his home, and, of course, (5) both the written and the oral confessions which Ms. Wansley gave Officer Hanna and which the trial court found to be admissible as informed, free, and voluntary statements given by Ms. Wansley.
¶ 23. Because the foregoing facts corroborate the testimony of accomplice Joey Farve that Ms. Wansley participated in the burglary of the Howell residence, Ms. Wansley's second issue fails the second part of the Holmes test is also satisfied. Therefore, there can be no "plain error" in the trial court's failure "to instruct the jury that the testimony of accomplice Joey Farve should be weighed with great caution," and the procedural bar remains intact.

IV. CONCLUSION
¶ 24. Both of Ms. Wansley's issues are procedurally barred. Her first issue is procedurally barred for several unrelated reasons, the most significant of which is that the record contains nothing about the content of any other statement which Ms. Wansley might have made. Indeed, Officer Hanna testified that while Ms. Wansley made other statements, she did not make them to him. The second issue is also procedurally barred because the record likewise contains nothing to indicate that Ms. Wansley's counsel filed a cautionary instruction or in any other manner requested the trial judge so to instruct the jury. Because there was no plain error to be found in her second issue, this Court enforces the procedural bar to our review of the second issue. Consequently, this Court affirms the trial court's judgment of the appellant's conviction of the felony of the burglary of a dwelling house and its sentence to serve a term of ten (10) years in the Mississippi Department of Corrections.
¶ 25. THE NESHOBA COUNTY CIRCUIT COURT'S JUDGMENT OF THE APPELLANT'S CONVICTION OF *200 THE FELONY OF BURGLARY OF A DWELLING HOUSE AND ITS SENTENCE OF THE APPELLANT TO SERVE TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., DIAZ, KING, PAYNE, and SOUTHWICK, JJ., CONCUR.
IRVING and LEE, JJ., NOT PARTICIPATING.