# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00416-COA

**BOBBY DAVIS**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

DATE OF JUDGMENT:                03/23/2021
TRIAL JUDGE:                     HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED:       PIKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:               DEE BATES
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 09/22/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Bobby Davis appeals his conviction for felonious abuse of a vulnerable person under

Mississippi Code Annotated section 43-47-19 (Rev. 2015). Davis physically attacked his

mother in the parking lot of a hardware store in McComb, Mississippi. On appeal, Davis

argues that neither the sufficiency nor the weight of the evidence was adequate to prove his

mother was a "vulnerable person" under the statute and that the trial court improperly refused

his proposed jury instruction for the offense of simple domestic violence. We find the

sufficiency and weight of the evidence were adequate for Davis's conviction. Further, we

find the trial court did not err in refusing Davis's proposed jury instruction.  Accordingly, we

affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On June 10, 2019, Davis, who was forty-three years old, was living with his sixty-eight-year-old mother, Marie Williams. At the time, Marie was undergoing cancer treatment for large B-cell lymphoma in her sinus passages. On that morning, Davis told his mother he had lost his car keys the night before, he needed gas for his vehicle, and he wanted her to purchase a radio for his vehicle. Marie told Davis she was going with her friend Buford to sell scrap metal, but after that she would help him. Marie testified that Buford was a strong man and did most of the work lifting the scrap metal while she picked up the little pieces.

¶3. Davis, Marie, and Buford arrived at the Home Hardware store in McComb, Mississippi, in Marie's truck to have the key made. While Marie went inside the store, Buford stepped outside the truck. Marie came back outside to retrieve her purse from the passenger side of the truck to pay for the car key. Davis, without warning or provocation, jumped out of the backseat and hit his mother in the head with his fist. Davis then knocked her down, jumped on her, and continued beating and stomping her, stating, "I'm going to kill you. I'm fixing to kill you." Marie testified she could not move as her son kicked, hit, dragged, and "pound[ed]" her. Buford ran over and pulled Davis off Marie. The hardware-store clerk came and helped Marie get inside the store. Davis continued to yell, "cuss," and throw rocks. Davis then fled the scene in Marie's truck but was later apprehended by police.

2

Once inside the store, Marie collapsed on a platform inside the door. She was bleeding from her head and crying. The clerk confirmed Marie's account of the attack. A security camera captured the assault as well, and the recording was entered into evidence and watched by the jury at trial.

¶4.     Marie testified that at the time of the attack, she was undergoing her second round of treatment for cancer, and "that made [her] head just explode." She had lived "in the woods by [her]self" for several years until Davis recently came to live with her. Although Marie could mow her lawn on a riding mower, she spent most of her days watching Netflix. Marie testified she could defend herself against her son when she was about thirty years old, but now she could not—she was "too old to do any kind of fighting" or "struggling." She also testified that she was afraid of Davis.[1] Due to Davis's attack, Marie had severe head pain, a swollen face, abrasions on her forehead, and knots on her head. Marie declined an ambulance but was dizzy. Marie wrote a statement in the patrol car and then sought medical treatment from her physician, who sent her to a local hospital for her injuries.

¶5.     The Pike County grand jury indicted Davis for the felonious abuse of Marie, a vulnerable adult, under Mississippi Code Annotated section 43-47-19. After a jury trial, Davis was convicted and sentenced pursuant to Mississippi Code Annotated section 97-3-7(2) (Rev. 2014), to twenty years in the custody of the Mississippi Department of

---

[1] The trial court granted the defense's request for a competency evaluation for Davis. He was found competent but had a history of mental illness exacerbated by drug use.

Corrections, with four years suspended and sixteen years to serve, to be followed by four years of post-release supervision. The court also ordered Davis to pay a $5,000 fine and $250 in restitution. After the court denied Davis's motion for judgment notwithstanding the verdict (JNOV) or a new trial, he appealed. Davis raises two issues on appeal. First, he argues the evidence was insufficient to prove Marie was a vulnerable person and that as a result the verdict was contrary to the weight of the evidence. Second, Davis claims that the trial court erred when it refused his proposed lesser-included-offense jury instruction of simple domestic violence.

## ANALYSIS

### I.      Sufficiency and Weight of the Evidence

¶6.     Davis's first issue on appeal is that the evidence was insufficient to prove Marie was a vulnerable person under the law. Davis therefore claims that the verdict was contrary to the weight of the evidence. To determine the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and ask whether "any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *Hunt v. State*, 81 So. 3d 1141, 1146 (¶18) (Miss. Ct. App. 2011). In determining whether the weight of the evidence supports a verdict, the standard of review is that an appellate court will only disturb a verdict if the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. *Id*. at (¶19).

¶7.     A person is guilty of felonious abuse of a vulnerable person if he "willfully inflicts

4

physical pain or injury upon a vulnerable person . . . ." Miss. Code Ann. § 43-47-19(3). A "vulnerable person" is defined as "a person, whether a minor or adult, whose ability to perform the normal activities of daily living or to provide for his or her own care or protection from abuse . . . is impaired due to a mental, emotional, physical or developmental disability or dysfunction, or brain damage or the infirmities of aging." Miss. Code Ann. § 43-47-5(q) (Rev. 2005).

¶8.    Davis contends the State offered insufficient proof that Marie could not "perform the normal activities of daily living" or provide for "her own care or protection from abuse"; the only evidence of impairment was her cancer treatment for B-cell lymphoma and "infirmities of aging." Davis relies on his evidence that his mother and Buford regularly picked up scrap metal to sell. Marie also lived alone in the country and mowed her own yard and raked her own leaves. Marie has survived cancer twice. Further, Davis states the video recording of the crime shows her walking normally, and she was able to get in the truck easily. Also, after Davis hit her, Marie stood up without assistance.

¶9.    Marie testified that she could not control Davis and was afraid of him. Marie also testified that she could not pull her trailer with her truck or lift heavy scrap metal by herself. Although Marie could mow her yard with a riding lawnmower, mostly she watched Netflix at home. Marie testified that because of her age and cancer, she could not do the activities she once did, and she could not defend herself against her son as she once could. Further, the jury saw the video of the attack and heard Marie's testimony and other witness testimony.

5

The evidence was sufficient for a rational jury to find beyond a reasonable doubt that Marie, a sixty-eight-year-old cancer patient, was a vulnerable person. We further find that to allow the verdict to stand would not sanction an unconscionable injustice.

## II. Lesser-Included-Offense Jury Instruction

¶10. Davis argues that the trial court erred in refusing what he claims was a lesser-included-offense jury instruction of simple domestic violence. Davis contends this jury instruction should have been given because evidence was presented from which the jury could have concluded Marie was not a "vulnerable person." Further, he argues that if the jury had found Marie was not a vulnerable person, then the crime committed would be simple assault, a lesser-included offense, with a domestic-violence aggravating component. A trial judge's refusal of a lesser-included-offense jury instruction is reviewed de novo, as this is a question of law. *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013) (citing *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007)).

¶11. Davis offered instruction D-5 on simple domestic violence, which read as follows:

> If you find beyond a reasonable doubt from the evidence in this case that:
> 1. On or about June 10, 2019, in Pike County, Mississippi;
> 2. Bobby Davis purposely and knowingly, caused bodily injury to his mother, Marie Williams; then you shall find Bobby Davis guilty of Simple Domestic Violence.

The State argued the instruction was improper because it covered a lesser non-included offense, which is prohibited under this Court's holding in *Gilmore v. State*, 162 So. 3d 876, 879-80 (¶11) (Miss. Ct. App. 2015). Further, the State contended simple domestic violence

6

and felony abuse of a vulnerable adult have different elements, and therefore, simple domestic violence was a lesser-related offense but not a lesser-included offense. We agree.

¶12. In Mississippi, "a criminal defendant no longer has the unilateral right . . . to insist upon an instruction for lesser-related offenses which are not necessarily included in the charged offense(s), i.e., so-called lesser-nonincluded-offense instructions." *Hye v. State*, 162 So. 3d 750, 751 (¶2) (Miss. 2015). A "lesser-non-included offense," also called a "lesser-related offense" or a "lesser offense," has elements not contained in the greater crime. *Id* at (¶8). Abuse of a vulnerable person is defined as "willfully inflict[ing] pain or injury upon a vulnerable person." Miss. Code Ann. § 43-47-19. Domestic violence is defined in pertinent part as "purposely [or] knowingly caus[ing] bodily injury to" a person related to the defendant as listed in the statute (i.e., a current or former spouse, a child, a parent, etc.). Miss. Code Ann. § 97-3-7(3)(a) (Supp. 2016). Abuse of a vulnerable adult and simple domestic violence have different elements pertaining to the victim. Since an essential element of simple domestic violence is a specific relationship between the victim to the defendant, which is not included in the crime of abuse of a vulnerable person, simple domestic violence is not a lesser-included offense of abuse of a vulnerable adult. Further, a defendant could be guilty of abuse of a vulnerable person without being guilty of simple domestic violence. Davis's proposed jury instruction on simple domestic violence was not a lesser-included offense of abuse of a vulnerable person; therefore the trial court properly refused to give the instruction.

7

¶13. The partial dissent agrees that Davis was not entitled to a simple-domestic-violence jury instruction. However, the partial dissent would hold that this Court should reverse Davis's conviction because the trial court did not sua sponte correct Davis's proposed simple-domestic-violence jury instruction to be a simple assault jury instruction. The partial dissent's conclusions have the potential to weaken and alter foundational protections inherent in the criminal justice system.

¶14. First, the issue of whether the trial court should have sua sponte corrected the proposed domestic violence jury instruction was never raised by Davis at trial or on appeal. A party is required to submit instructions or object to instructions to preserve those issues for appeal. *See* MRCrP 22(d). Further, this Court repeatedly has held that issues not brought before the trial court are deemed waived and may not be raised for the first time on appeal. *Smith v. State*, 986 So. 2d 290,296 (¶19) (Miss. 2008); *see also Donaldson v. State*, 262 So. 3d 1135, 1153-54 (¶67) (Miss. Ct. App. 2018); *Wilcher v. State*, 479 So. 2d 710, 712 (Miss. 1985). This Court "cannot find that a trial judge committed reversible error on a matter not brought before him to consider." *Montgomery v. State*, 891 So. 2d 179, 187 (¶33) (Miss. 2004); *see also Stringer v. State*, 279 So. 2d 156, 158 (Miss. 1973). Davis's trial counsel never tendered or proposed a simple assault jury instruction at trial. Further, Davis's trial counsel never requested an opportunity to correct his refused instruction to include a new theory of defense. "Traditionally, trial counsel's decision regarding whether to request certain jury instructions is considered trial strategy." *Taylor v. State*, 109 So. 3d 589, 596

(¶27) (Miss. Ct. App. 2013).  Here, Davis not only failed to raise this issue to the trial court at trial, his motion for JNOV simply stated, "[T]he denial of Defense Jury Instruction D-5, the lesser included offense, was in error." Davis never argued the trial court should have corrected instruction D-5 to be a simple assault theory of defense.

¶15.    Further, even on appeal, Davis never asks this Court to do what the partial dissent indicates should be done. The partial dissent relies on *Mease v. State*, 539 So. 2d 1324 (Miss. 1989), as authority to reverse the trial court's judgment for failing to give an instruction not offered by the defense. It is important to note that Davis never cites *Mease* in his appellant's brief. In an even stranger twist of legal intrigue, Davis does not even make the argument the partial dissent makes. Davis did not ask in his appellant's brief to have his conviction reversed for the trial court's failure to correct the simple domestic violence jury instruction to be a simple assault jury instruction. Davis only claimed the trial court was in error for refusing his simple domestic violence instruction. The duty to cite relevant authority is imposed on the appellant; issues not supported by relevant authority are barred from our review. *Anderson v. State*, 89 So. 3d 645, 654 (¶29) (Miss. Ct. App. 2011) (citing *Edwards v. State*, 856 So. 2d 587, 599 (¶45) (Miss. Ct. App. 2003)); *see also Simmons v. State*, 805 So. 2d 452, 487 (¶90) (Miss. 2001); M.R.A.P. 28(a)(7). Davis never raised this issue on appeal or cited any authority such as *Mease* in his brief on this issue.  Therefore, this Court should hold this issue is barred from review.

¶16.    Despite the procedural waiver aspects of this issue, the partial dissent would stretch

the authority that started in *Newell v. State*, 308 So. 2d 71, 78 (Miss. 1975), and was later

expanded in *Harper v. State*, 478 So. 2d 1017, 1022 (Miss. 1985), and *Mease*, 539 So. 2d at

1335, as legal justification for reversing Davis's conviction. In *Newell*, the Mississippi

Supreme Court held that a trial judge has the authority to modify instructions by the parties

"if, in his discretion, he concludes such to be necessary." *Newell,* 308 So .2d at 78. That

holding was designed to ensure that the jury was properly informed of the law and that a

judge did not sit idly if the parties proposed instructions that were incorrect statements of the

law. As far back as 1882, the Supreme Court has affirmed the power of trial courts to correct

erroneous statements of the law in tendered jury instructions:

> We are not disposed to hamper and abridge the court in the exercise of this valuable power, nor to prescribe too strictly the shape which the modification must take; but it is manifest from the language of the statute that the Legislature intended to deny the judge the power of originating independent instructions of its own motion, **not called for or rendered necessary by those requested by counsel**.

*Watkins v. State*, 60 Miss. 323, 325 (1882) (emphasis added). In reading the emphasized

portion, the Court was equally clear in instructing a judge not to create new instructions and

instead consider "those requested by counsel." *Id.*

¶17. The partial dissent further relies on *Harper* where the defendant was tried for burglary

of a dwelling. *Harper*, 478 So. 2d at 1018. The defense requested a lesser-included-offense

instruction for trespass based on the wrong statute. *Id*. The trespass at issue was of a

dwelling, and the proposed instruction derived from a statute for "trespass upon enclosed

lands." *Id.* at 1022. The trial judge refused the proposed instruction, and the jury was not

10

instructed on a lesser-included offense. *Id*. The defendant was convicted of burglary of a dwelling. *Id*. On appeal, the Mississippi Supreme Court held:

> Where under the evidence a party is entitled to have the jury instructed regarding a particular issue and where that party requests an instruction which for whatever reason is inadequate in form or content, the trial judge has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new, corrected instruction. Where the trial judge fails in this duty and where the proffered instruction relates to a central issue in the case which is not covered by any other instruction given to the jury, we will reverse.

*Id. Harper* is clearly distinguishable from the present case. The defense in *Harper* offered a lesser-included offense of trespass but under the wrong type of trespass. *Id.* The Mississippi Supreme Court held it was an error for the trial court to "refuse an instruction on grounds that 'it has been inartfully drawn.'" *Id.* (quoting *Thomas v. State*, 278 So. 2d 469, 472-73 (Miss. 1973)). In the case on appeal here, the central issue the defense argued at trial involved the victim not being a vulnerable adult. The defense never asked for a simple assault instruction. *Harper*'s guidance is that when a proposed instruction is legally wrong, the trial judge may correct the instruction to ensure the law is properly before the jury.

¶18.    Finally, regarding the partial dissent's reliance on *Mease*, it is certainly understandable how the language utilized by the Mississippi Supreme Court in that case can guide the partial dissent's rationale in this case. In *Mease*, the defendant was on trial for capital murder. *Mease*, 539 So. 2d at 1325. The defense offered five separate lesser-included-offense manslaughter jury instructions. *Id.* at 1334. The trial court refused all five proposed

11

instructions, holding there was no evidentiary basis to give any manslaughter instructions. *Id.* at 1335. On appeal, Mease argued the trial court erred when it refused to instruct the jury on the lesser-included offense of manslaughter. *Id.* at 1327. The Mississippi Supreme Court held the trial court erred in its holding that the defendant was not entitled to any manslaughter instruction. *Id.* The Mississippi Supreme Court found the evidence did support a manslaughter instruction and reversed the conviction. It is important to note that *Mease* was a death penalty case that required "heightened scrutiny." *Mease* does not stand for the proposition that trial courts should play the role of defense attorney and give a jury instruction that has not been proposed or requested based on a lesser-included theory of a defense never presented.

¶19.    There is one case, *Conner v. State*, 632 So. 2d 1239 (Miss. 1993), *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158 (Miss. 1999), which provides compelling appellate guidance on this issue. The *Conner* case is most akin to the case at hand. Conner was on trial for capital murder and did not request any lesser-included-offense instructions. Conner was found guilty of capital murder. *Id.* On appeal, Conner argued the trial court erred by not giving a lesser-included-offense instruction. *Id.* The Mississippi Supreme Court held the defendant was not entitled to a lesser-included-offense instruction because there was no evidentiary basis to support the instruction, and the defendant never requested a lesser-included-offense instruction. *Id.* The Mississippi Supreme Court affirmed the conviction, stating, "**The case law does not impose upon a trial court a duty to instruct the jury sua**

12

**sponte, nor is a court required to suggest instructions in addition to those which the parties tender.**" *Id.* at 1254 (emphasis added). In fact, and most importantly, the Mississippi Supreme Court clipped the span of *Mease*'s legal wings by stating:

> Conner argues that under *Mease* and *Harper*, the trial court is duty-bound not only to revise technically flawed instructions but also to advise defense counsel that a definitional instruction would also have to be submitted and then provide an opportunity to prepare such an instruction. ***Mease*** **and** ***Harper*** **should not be read so broadly. The case law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender.** Conner offered no substantive instruction pertaining to a lesser-included offense, and "the fact that . . . [he] requested no lesser included instruction controls." *Hansen v. State*, 592 So. 2d 114, 142 (Miss. 1991).

(Emphasis added).

¶20.    It is instructive to note that the *Conner* case (1993) was decided after *Mease* (1989) and *Harper* (1985). Following *Conner*, there is a clear line of cases from this Court and the Mississippi Supreme Court holding that the trial court has no duty to instruct a jury sua sponte.[2] Further, this Court held in *Peterson v. State*, 740 So. 2d 940, 950-51 (¶35) (Miss. Ct. App. 1999):

> Because Peterson requested neither a manslaughter nor a self-defense instruction, he cannot now complain on appeal for the first time that he was entitled to have the jury instructed on either of these two matters. *See Griffin*

---

[2] *See Wansley v. State*, 734 So. 2d 193, 198 (¶20) (Miss. Ct. App. 1999), *Trigg v. State*, 759 So. 2d 448, 451 (¶8) (Miss. Ct. App. 2000); *Booze v. State*, 942 So. 2d 272, 275 (¶15) (Miss. Ct. App. 2006); *Booze v. State*, 942 So. 2d 272, 275 (¶15) (Miss. 2009); *Giles v. State*, 650 So. 2d 846, 854 (Miss.1995); *McGregory v. State*, 979 So. 2d 15, 18 (¶12) (Miss. Ct. App. 2008); *Westbrook v. State*, 29 So. 3d 828 (¶12) (Miss. Ct. App. 2009); *Ronk v. State*, 172 So. 3d 1112 (¶68) (Miss. 2015).

*v. State*, 480 So. 2d 1124, 1127 (Miss.1985) (holding that where "appellants never submitted a circumstantial evidence instruction to the court for its consideration," the trial court "cannot be put in error for refusal to instruct the jury where no written request was submitted") (citing *Newell v. State*, 308 So. 2d 71, 78 (Miss.1975)). Thus, we resolve Peterson's fifth issue adversely to him by declining to place the trial court in error on an issue which Peterson's counsel never presented to it in the first place.

The Mississippi Supreme Court reaffirmed *Conner* as late as 2015 in *Ronk v. State*, 172 So. 3d 1112, 1139 (¶68) (Miss. 2015). In *Ronk*, the Court stated, "Because Ronk did not request any instructions on statutory mitigating circumstances or object to the mitigation instruction actually given, he is procedurally barred from raising this issue for the first time on appeal." *Id*. at 1139 (¶68). In essence, between 1993 (when *Conner* was decided) and 2015 (when *Ronk* was decided), the Mississippi Supreme Court and the Mississippi Court of Appeals had affirmed the holding in *Conner* and clearly articulated that a trial court had no duty to sua sponte instruct a jury. There is a big difference in requiring a judge to correct an erroneous statement of law in a tendered jury instruction and requiring a judge to submit a completely new theory-of-defense instruction. Here, the defense never requested a simple assault jury instruction.

¶21.    The Code of Judicial Conduct mandates an independent and impartial judiciary. *See* Miss. Code Jud. Conduct Canons 1, 3(E)(1). In fact, the Code of Judicial Conduct uses the word "impartial" twenty-six times. "An independent and honorable judiciary is indispensable to justice in our society." *Id*. "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of

14

the judiciary." Miss. Code Jud. Conduct Canon 2(A). "A judge shall perform the duties of judicial office impartially and diligently." *Id.* "A judge shall perform judicial duties without bias or prejudice." Miss. Code Jud. Conduct Canon 3(B)(5). "A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice." *Id.* How can a judge comply with these canons and sua sponte give jury instructions as to potential defense strategy? Parties to litigation would lose confidence in the independence of the courts if a judge tells an attorney for one side what jury instructions should be submitted to provide new theories of defense.[3]

¶22. This Court has expressed concern when a judge has exceeded his neutral role. Although not directly on point, but somewhat analogous, is *Magee v. State*, 759 So. 2d 466, 470 (¶13) (Miss. Ct. App. 2000) (quoting *Fermo v. State*, 370 So. 2d 930, 933 (Miss. 1979)), where this Court emphasized:

> The Mississippi Supreme Court has spoken with regard to the role of the trial judge in the plea bargaining process: While a trial judge must control the sentencing phase of a criminal trial and has the responsibility and duty of approving or disapproving a recommendation by the prosecutor, **he should never become involved, or participate, in the plea bargaining process**. He

---

[3] By offering new jury instructions not requested, a judge could inadvertently tinker or interfere with legitimate defense strategy. If a judge offered jury instructions to one side in a dispute, it would erode confidence in the judiciary when the party on the other side sees the judge "helping" an adversary. Further, the approach of the partial dissent would encourage a savvy defense attorney to offer insufficient instructions and place the burden on the court to decide the best theory of defense, and if the defendant is convicted, appeal on the issue that the trial court should have sua sponte offered a particular instruction. That has the potential to upend and break down long-established legal precedent in the criminal justice system.

must remain aloof from such negotiations. The trial judge always must be circumspect and unbiased, **at all times displaying neutrality and fairness in the trial**, and consideration for the constitutional rights of the accused.

(Emphasis added).

¶23.	Further, the criminal justice system is designed to ensure justice by mandating adversarial roles of the participants. The United States Supreme Court has affirmed the importance of the adversarial roles of attorneys and the impartiality of the court. "Thus, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 685 (1984).  The "premise of our adversary system of criminal justice . . . that partisan advocacy . . . will best promote the ultimate objective that the guilty be convicted and the innocent go free."  *Herring v. New York*, 422 U.S. 853, 862 (1975) (internal quotation marks omitted).  Further, the Mississippi Supreme Court has followed suit: "[o]ur adversary system, through the well defined roles of its participants, is also designed to protect individual rights of defendants."  *Wharton v. State*, 734 So. 2d 985, 990 (¶20) (Miss. 1998).

¶24.	Our criminal justice system depends on counsel to decide their theories of the case and zealously represent their clients. The Mississippi Rules of Professional Conduct comments on that very important role. "As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." Miss. Rules of Prof. Conduct Preamble. Yet the partial dissent blurs the lines between the judge as neutral arbitrator and the attorney as an

16

advocate. The partial dissent, by requiring the judge to prepare jury instructions for one party over another, tilts the adversarial system from impartial judicial arbiter to one potentially taking sides. This erodes the neutrality and independence mandated for the judicial branch.[4]

¶25.    A "broad" interpretation of *Mease* has the potential to erode the fundamental principals upon which the criminal justice system is based.[5] To erode those principles on an issue not presented to the trial court forces the trial judge away from the role of neutral arbiter toward advocate. "**In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate.**" *Dennis v. United States*, 384 U.S. 855, 875 (1966) (emphasis added).

¶26.    We find the evidence here was sufficient to prove Marie was a vulnerable person and upholding the verdict would not sanction an unconscionable injustice. Further, we find the trial court did not err in refusing Davis's proposed simple-domestic-violence jury instruction. Accordingly, we affirm Davis's conviction and sentence.

¶27.    **AFFIRMED.**

**CARLTON, P.J., McCARTY AND SMITH, JJ., CONCUR.  GREENLEE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN**

---

[4] *See Buchanan v. Buchanan*, 587 So. 2d 892, 896 (Miss.1991); *Haley v. State*, 331 So. 3d 39, 40 (¶10) (Miss. Ct. App. 2021); *In re Blake*, 912 So. 2d 908, 913 (¶17) (Miss. 2005); *Batiste v. State*, 337 So. 3d 1013, 1021 (¶18) (Miss. 2022); *Hathcock v. S. Farm Bureau Cas. Ins. Co.*, 912 So. 2d 844, 850 (¶16) (Miss. 2005).

[5] In *Conner*, the Mississippi Supreme Court expressly warned against a "broad" interpretation of *Mease*.  *Conner*, 632 So. 2d at 1254.

**OPINION. BARNES, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J., WESTBROOKS, McDONALD AND EMFINGER, JJ.**

**BARNES, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶28.    I concur with the lead opinion that the State presented sufficient evidence for Davis's conviction and that the trial court properly refused Davis's jury instruction on simple domestic violence because it was not a lesser-included offense of abuse of a vulnerable person. I would, however, reverse and remand for a new trial, as Davis was entitled to a jury instruction on the lesser-included offense of simple assault. The lead opinion's holding on this issue is contrary to precedent. Accordingly, I respectfully concur in part and dissent in part.

¶29.    "A lesser-included offense by definition is one in which all its essential ingredients are contained in the offense for which the accused is indicted. . . ." *State v. Shaw*, 880 So. 2d 296, 301 (¶18) (Miss. 2004) (quoting *Fulcher v. State*, 805 So. 2d 556, 560 (¶10) (Miss. Ct. App. 2001)). "Stated differently, if an accused is guilty of the offense for which he was indicted, the accused is also guilty of any crime considered to be a lesser-included offense." *Smith v. State*, 907 So. 2d 292, 295 (¶16) (Miss. 2005) (citing *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985)). Simple assault is defined as "attempt[ing] to cause or purposely, knowingly or recklessly caus[ing] bodily injury to another . . . ." Miss. Code Ann. § 97-3-7(1)(a) (Supp. 2016). The elements of simple assault are identical to the charged offense of abuse of a vulnerable person, except the latter requires the victim to have been a vulnerable

18

person. *Compare* Miss. Code Ann. § 97-3-7(1)(a) (simple assault) *with* Miss. Code Ann. § 43-47-19(3) (Rev. 2015) (abuse of a vulnerable person).[6]

¶30. To warrant a lesser-included-offense instruction, "a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013) (quoting *Goodnite v. State*, 799 So. 2d 64, 69 (¶24) (Miss. 2001)). There was some evidence from which a reasonable jury could have found Davis not guilty of abuse of a vulnerable person but guilty of simple assault. Evidence presented at trial supported Davis's contention that his mother was not a "vulnerable person" as defined by the statute. Until recently, Marie lived in the woods by herself. She also drove, ambulated well, collected and sold scrap metal with a business partner, and mowed her own lawn with a riding mower. There was a jury question as to whether Marie was a vulnerable person; therefore, Davis was entitled to a jury

---

[6] The Mississippi Supreme Court has found that the terms "purposely or knowingly," as found in the statute for simple assault, have substantially the same meaning as "willfully," found in the statute for abuse of a vulnerable person. *See Greenleaf v. State*, 267 So. 3d 749, 752 (¶13) (Miss. 2019) (analyzing the elements of aggravated assault and defense of accident related to the defense counsel's failure to offer an excusable-homicide jury instruction). Further, the supreme court has found the phrase "causing bodily injury," an element of simple assault, includes "inflicting physical pain," a phrase found in the statute for abuse of a vulnerable person. *Murrell v. State*, 655 So. 2d 881, 884 (Miss. 1995) (The supreme court found a new trial was warranted for a conviction of simple assault because the evidence that the victim suffered pain was "so weak."), *criticized on other grounds by Dilworth v. State*, 909 So. 2d 731, 735 n.4 (Miss. 2005). Therefore, these slight differences in language are immaterial here.

instruction on simple assault, a lesser-included offense of abuse of a vulnerable person.

¶31. While the lead opinion is correct that Davis did not cite the authority on appeal relied upon herein, there is no doubt that the question of whether Davis was entitled to a jury instruction on simple assault was clearly addressed by the parties. In fact, the State contends on appeal that simple assault is not a lesser-included offense of abuse of a vulnerable person; therefore, Davis was not entitled to a simple-assault instruction.[7] Davis argues that his instruction on "simple domestic violence" was a lesser-included-offense instruction. He contends that if the jury found the victim "was not a vulnerable person, then the crime committed would be simple assault, as a lesser included offense, with a domestic violence aggravating component."[8] The issue of instructing on simple assault was, therefore, sufficiently raised on appeal.

---

[7] The State cites *Jones v. State*, 326 So. 3d 521 (Miss. Ct. App. 2021), in support because *Jones* allegedly held "the crimes of assault and abuse of a vulnerable person are separate crimes." However, that was not the holding of *Jones*, nor is the case applicable. In *Jones*, the defendant argued he was punished twice for the same actions by his convictions for both aggravated assault and abuse of a vulnerable person. *Id.* at 526 (¶28). The trial court sentenced him with a prison sentence from the abuse-of-a-vulnerable-adult statute, as well as a fine from one of the aggravated-assault statute's "aggravating circumstances," which apply to a person who is at least sixty-five years old or to a "vulnerable person." *Id.* at 527 (¶30) (citing Miss. Code Ann. § 97-3-7(14)(c)). This Court rejected this argument, holding that when a statute "merely imposes an elevated sentence" for a felony and "does not delineate an independent substantive offense," double jeopardy is not triggered. *Id.* at 528 (¶36) (citing *Lewis v. State*, 112 So. 3d 1092, 1097 (¶15) (Miss. Ct. App. 2013)).

[8] Davis cites *Jones* in support of his argument that "the 'domestic violence' aspect is not an additional element" but a "prequel classification for subsequent sentencing enhancement to simple assault under section 97-3-7(3)."

¶32. Mississippi caselaw is well established that it "does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender." *Conner v. State*, 632 So. 2d 1239, 1254 (Miss. 1993), *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158, 162 (¶13) (Miss. 1999). However, the Mississippi Supreme Court has held that where the defendant has requested a lesser-included-offense instruction,[9] the issue relates to a central feature of the case, and an instruction is tendered in improper form or content, then the trial court has "the obligation to advise counsel . . . of the nature of the deficiencies of the proferred instruction and afford counsel a reasonable opportunity to present a new instruction." *Mease v. State*, 539 So. 2d 1324, 1335 (Miss. 1989) (quoting *Harper v. State*, 478 So. 2d 1017, 1022 (Miss. 1985)).

¶33. Three cases are instructive on this matter: *Harper*, *Mease*, and *Conner*. In *Harper*, the defendant was tried for burglary of a dwelling. *Harper*, 478 So. 2d at 1018-19. His defense counsel proposed a lesser-included-offense instruction supposedly for trespass but based it on the wrong statute—"trespass upon enclosed lands." *Id.* at 1022. The supreme court found the instruction at "[t]he very best . . . inartfully drawn; at worst, . . . an unacceptably inadequate presentation of the lesser included offense of trespass to the jury." *Id.* The trial judge refused the instruction without giving a reason why; thus, the jury was not instructed on the lesser-included offense, and the defendant was convicted of burglary. *Id.*

---

[9] *Conner*, 632 So. 2d at 1254.

21

at 1019-20, 1022. The supreme court stated that "the trespass instruction relate[d] to a central feature of the case" because Harper's "entire defense . . . was that he was only guilty of trespass," and no other instruction was offered that referenced trespass. *Id.* at 1022. In this instance, the supreme court held that the defendant was entitled to have this lesser-included offense "submitted to the jury via a properly worded instruction," reversed his conviction, and remanded for a new trial. *Id.* at 1023. The supreme court explained:

> This appeal presents important questions respecting the nature and extent of the trial judge's responsibility with regard to instructing juries in the law in criminal cases. We answer these questions by declaring that, where under the evidence a party is entitled to have the jury instructed regarding a particular issue and where that party requests an instruction which for whatever reason is inadequate in form or content, the trial judge has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new, corrected instruction. *Where the trial judge fails in this duty and where the proffered instruction relates to a central issue in the case which is not covered by any other instruction given to the jury, we will reverse.*

*Id.* at 1018 (emphasis added).

¶34. Similarly, in *Mease*, the defendant's conviction for capital murder was reversed and a new trial was granted due to the trial court's refusal to instruct the jury on the lesser-included offense of manslaughter. *Mease*, 539 So. 2d at 1327. At trial, defense counsel proposed five separate manslaughter instructions. *Id.* However, none of the instructions "adequately tracked the language of the particular manslaughter statute implicated by the facts." *Id.* The trial judge refused all five instructions on the grounds Mease was not entitled to a manslaughter instruction, "not merely that those tendered were in improper form." *Id.*

22

at 1335. The supreme court found reversible error, citing *Harper*: there was sufficient evidence for a manslaughter instruction, and the issue "relate[d] to a central feature of the case." *Id.* The supreme court held that the trial judge had a duty to offer a manslaughter instruction based upon the correct "species" of manslaughter. *Id.* at 1335-36. The supreme court noted a "fine distinction" between *Harper*, which "concerned an inartfully drawn trespass instruction," and *Mease*, where the defendant failed to request the correct "species" of manslaughter. *Id.* at 1335.

¶35. In *Conner*, however, the Mississippi Supreme Court declined to extend *Mease* and *Harper*. *Conner*, 632 So. 2d at 1254. The defendant, on trial for capital murder, did not request any lesser-included-offense instruction or an instruction defining simple murder. *Id.* On appeal, the defendant argued that under *Mease* and *Harper*, "the trial court [was] duty-bound . . . to revise technically flawed instructions" as well as advise defense counsel that a definitional instruction would need to be submitted. *Id.* The supreme court rejected this argument, stating *Mease* and *Harper* "should not be read so broadly. The case law does not impose upon a trial court a duty to instruct the jury *sua sponte*, nor is a court required to suggest instructions in addition to those which the parties tender." *Id.* The supreme court found the defendant "offered no substantive instruction pertaining to a lesser-included offense, and 'the fact that . . . [he] requested no lesser included instruction controls.'" *Id.* (quoting *Hansen v. State*, 592 So. 2d 114, 142 (Miss. 1991)).

¶36. I find the instant case more akin to *Harper* than *Conner*. The refused jury instruction

23

"related to the central feature of the case"—how could the jury convict Davis even if it found Marie was not a vulnerable person? Davis's proposed instruction needed only one correction, which the trial court could have made by reforming the instruction's title from "Simple Domestic Violence" to "Simple Assault" and deleting the unnecessary and uncontested fact that Marie Williams was Davis's mother. Both crimes are contained in the same statute. Aside from these corrections, the jury instruction properly covered the elements of simple assault, which is the proper lesser-included offense of abuse of a vulnerable person.

¶37. I do not find that *Mease* can be meaningfully distinguished. I agree that *Harper* is somewhat distinguishable from the present case. The Mississippi Supreme Court itself noted this distinction in *Mease*, as I stated above. In extending *Harper*'s ruling, the supreme court stated, "To be sure, there is a fine distinction that may be made" between *Harper*'s concern for an inartfully drawn trespass instruction and *Mease*'s concern for five separate manslaughter instructions, which were all the wrong type of manslaughter under the facts of that case. *Mease*, 539 So. 2d at 1335. However, the *Mease* court found the case "well within the best view of the principle justifying *Harper*." *Id.*

¶38. The lead opinion makes no attempt to distinguish *Mease* beyond noting it to be a capital case entitled to "heightened scrutiny." Neither *Mease* nor *Conner* limits *Mease* to capital cases. *Conner* acknowledges *Mease*'s "hold[ing] that where 'a disputed instruction relates to a central feature of the case and where there is no other instruction before the court

24

which treats the matter,' the trial court is obliged to reform the instruction if it is merely 'deficient in form.'" *Conner*, 632 So. 2d at 1254 (quoting *Mease*, 539 So. 2d at 1335); *accord Harper*, 478 So. 2d at 1022-23. This holding has not been limited to capital cases.

¶39. Furthermore, the instant case concerns a tendered lesser-included-offense instruction derived from section 97-3-7(3)(a) for simple domestic violence and an appropriate instruction derived from section 97-3-7(1)(a) for simple assault. Basically, the elements are the same except for adding a domestic relationship for the former crime. The *Mease* court noted there to be "no less than eleven species of the genus manslaughter."[10] *Mease*, 539 So. 2d at 1335. The manslaughter instructions tendered by the defense were "directed to unlawful act manslaughter under Section 97-3-31 and heat of passion manslaughter under Section 97-3-35." *Id.* The manslaughter statute for which there was a legally sufficient basis was section 97-3-27 (1972) (felony manslaughter). Therefore, the two lesser offenses in the instant case (one incorrectly tendered and the other not tendered) are closer in the Code sections than the different manslaughter sections identified in *Mease* and more akin by nature.

¶40. Lastly, the lead opinion focuses on *Conner*'s admonition that "[t]he case law does not impose upon a trial court a duty to instruct the jury *sua sponte* . . . ." In this focus, the lead opinion fails to recognize that the instruction proposed in the *Conner* appeal would only have been "sua sponte" in the trial court because no lesser-included offense instruction was tendered. The supreme court held the controlling factor was that no lesser-included

---

[10] *See* Miss. Code Ann. §§ 97-3-27 to -47 (Rev. 2020).

25

instruction had been offered. *Id.* at 1254; *see id.* (quoting *Hansen v. State*, 592 So. 2d 114, 142 (Miss. 1991) ("[T]he fact that . . . [he] requested no lesser-included instruction *controls*.'" (emphasis added))). In the present case, we are not dealing with a situation where no lesser-included offense jury instruction was offered; we are dealing with the trial court's duty to modify an erroneous lesser-included instruction that was offered and goes to the central issue. Any "sua sponte" action by the trial court of offering a jury instruction is therefore not triggered in this circumstance. Instead, the trial court would merely be revising a lesser-included-offense jury instruction that already had been proposed and was incorrect or inartfully drawn. Here, a jury instruction on a lesser-included offense was proposed, as in *Mease*, and refused.

¶41. Despite the lead opinion's forecast of the erosion of independence of the judiciary, my proposed holding, as that of *Mease* and *Harper*, is quite limited. The duty to revise, not submit, a jury instruction only applies where a lesser-included-offense instruction has been proposed and goes to the central issue of the case. The *Harper* court built upon the "strong policy pronouncement that in every criminal prosecution the jury should 'be fully instructed as to the law in each case . . . *as the ends of justice . . . require*." *Harper*, 478 So. 2d at 1022 (emphasis added) (quoting *Newell v. State*, 308 So. 2d 71, 78 (Miss. 1975)). The holding of *Mease*, and the "ends of justice," require us to reverse; because the lead opinion fails to do so, I dissent.

**WILSON, P.J., WESTBROOKS, McDONALD AND EMFINGER, JJ., JOIN**

26

**THIS OPINION.**